**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**JONESBORO DIVISION**

**BRENDA EDWARDS**                                                                          **PLAINTIFF**

**v.**                                        **3:05CV00293-WRW**

**SANYO MANUFACTURING**
**CORPORATION**                                                                            **DEFENDANT**

<u>**ORDER**</u>

Plaintiff alleges that she was subjected to sexual harassment, endured a hostile work environment, and was retaliated against during her employment with Defendant, in violation of Title VII of the Civil Rights Act of 1964 and the Family Medical Leave Act ("FMLA").[1] Defendant moved for Summary Judgment (Doc. No. 24), arguing that Plaintiff failed to establish the *prima facie* elements of a sexual harassment claim and retaliation. For the following reasons, Defendant's Motion is DENIED in part and GRANTED in part.

**I.      Background**

Plaintiff has been employed by Defendant as an Assembly Line Worker since August 18, 2003.  As an employee, the terms and conditions of her employment, including layoff, are governed by a collective bargaining agreement.

Between July and November 2004, Plaintiff alleges that she was subjected to severe sexual harassment.  Plaintiff alleges that on one occasion she discovered that Don Holiman, a Production

_____

[1]29 U.S.C. § 2612(a)(1).

Manager, was standing behind her with arms crossed and smiling as she was bending over on the job.[2]

Plaintiff alleges that Keenan Bradley, a group leader, exposed himself to her and co-worker LaBelle Hodges during a lunch break at the plant on July 13, 2004.[3]  While standing with is pants pulled down, Bradley allegedly stated, "this is 9 3/4, can you handle it?"[4]  Plaintiff maintains that the incident shocked and humiliated her, but that Bradley just laughed at her.[5]  Plaintiff also claims that Bradley brushed up against her on as many as three separate occasions while making comments such as "do you feel that" and "you know you want me."[6]  Plaintiff maintains that Bradley "let her know that he could reprimand, discipline, or terminate anybody and that all he would have to do is go speak with Mr. Holiman and it would be done."[7]

Plaintiff asserts that Curtis Anderson, a Production Line Supervisor, grabbed the waistband of his pants and pulled them in such as way as to show her the imprint of his genitals.  Anderson was standing with Bradley at the time and, although he didn't say anything, Anderson smiled at Plaintiff as he was doing it.[8]

---

[2]Doc. No. 24-2, p. 8.

[3]*Id*. at p. 3.

[4]*Id*.

[5]*Id*. at p. 3-4.

[6]Doc. No. 26.

[7]Doc. No. 24-2, p. 11.

[8]*Id*. at p. 7.

Plaintiff claims that James Young, a group leader, along with another unknown employee gave her a piece of chewing gum shaped like a penis.[9]   Finally, in October 2004, Plaintiff alleges that Bobbie Billups, a female hourly employee, shoved her backwards leading to a heated exchange between the two women. Plaintiff maintains that Billups was acting at the behest of management. Plaintiff complained to her union president Melvin Jones and asked him to file a grievance, but he refused stating that she "shouldn't open that can of worms."[10]

In support of her FMLA retaliation claim, Plaintiff alleges that she wasn't allowed leave to go to doctor's appointments on several occasions.  In response, Defendant notes that in 2005, after it had notice of the EEOC charge, Plaintiff was allowed to take off at least eight separate occasions totaling more than sixty working days.

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 13, 2004.[11]   Defendant was given notice of the charge of discrimination on November 15, 2004.[12]   Before making the EEOC charge, Plaintiff had made no complaints of harassment, retaliation, or FMLA violations to Defendant.[13]   Plaintiff filed this lawsuit on December 29, 2005.[14]

---

[9]*Id*. at p. 9.

[10]Doc. No. 24-2, p. 15.

[11]*Id*. at p. 18-19.

[12]*Id*. at p. 17.

[13]*Id*. at p. 10-15.

[14]Doc. No. 1.

## II.     Standard of Review

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds.[15]   The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[16]

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an extreme remedy that should only be granted when the movant has established a right to the judgment beyond controversy.[17]   Nevertheless, summary judgment promotes judicial economy by preventing trial when no genuine issue of fact remains.[18]   I must view the facts in the light most favorable to the party opposing the motion.[19]   The Eighth Circuit has also set out the burden of the parties in connection with a summary judgment motion:

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*,"[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact.  It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion.  Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts,

---

[15]*Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed R. Civ. P. 56.

[16]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[17]*Inland Oil & Transport Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

[18]*Id.* at 728.

[19]*Id.* at 727-28.

showing that there is a genuine dispute on that issue.  If the respondent fails to carry that burden, summary judgment should be granted.[20]

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.[21]

## III.    Analysis

### A.       Hostile Work Environment

In a sexual harassment suit, a plaintiff must show: (1) membership in a protected group; (2) the occurrence of unwelcome harassment; (3) a connection between the harassment and membership in the protected group; and (4) that the harassment affected a term, condition, or privilege of employment.[22]  If the alleged harasser is a co-worker, a  fifth element requires a showing that the employer "knew or should have known of the harassment and failed to take proper remedial action."[23]

Defendant denies Plaintiff's allegations and contends that Plaintiff did not avail herself of the sexual harassment procedure under its established policy.  Defendant admits that the alleged conduct was unwelcome, but maintains that Plaintiff's harassment was not severe enough to alter a condition of her employment, and that it had no knowledge of the harassment.

---

[20]*Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)).

[21]*Anderson*, 477 U.S. at 248.

[22]*Carter v. Chrysler Corp.*, 173 F.3d 693, 700 (8th Cir. 1999).

[23]*Kratzer v. Rockwell Collins, Inc.*, 398 F.3d 1040, 1047 (8th Cir. 2005).

Hostile work environment harassment occurs when the workplace is permeated with discriminatory intimidation and ridicule.[24]  The work environment should be "one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so."[25]  Relevant factors to determine whether conduct rises to the level of abusiveness include frequency, severity, and whether the conduct is physically threatening or humiliating.[26]

If the alleged harasser is a supervisor, then the employer is vicariously liable for its supervisor's actions.[27]  Vicarious liability is imposed because the employer gives supervisors power to hire and fire, to set work schedules, and to set pay rates.[28]  A harasser is a supervisor if he has "the power (not necessarily exercised) to take tangible employment action against the victim, such as the authority to hire, fire, promote, or reassign to significantly different duties."[29]

"When no tangible action is taken, an employer has an affirmative defense if it exercised reasonable care to prevent sexually harassing behavior, and if the employee unreasonably failed to take advantage of the employer's preventative measures."[30]  Defendant bears the burden of showing that Plaintiff unreasonably failed to take available steps to reduce the harm from the harassment.[31]

---

[24]*Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993).

[25]*Faragher v. City of Boca Raton*, 524 U.S. 786, 787 (1998).

[26]*Harris*, 510 U.S. at 23.

[27]*Joens v. John Morrel & Co.*, 354 F.3d 938, 940 (8th Cir. 2004).

[28]*McDaniel v. Sanyo Mfg. Corp.*, No. 3:05CV00018, 2006 WL 83470, at *2 (E.D. Ark. January 11, 2006).

[29]*Id.*

[30]*Id.*

[31]*Okruhlik v. University of Arkansas*, 395 F.3d 872, 880 (8th Cir. 2005).

Defendant admits that Plaintiff was a member of a protected group and that the conduct she alleges was unwelcome; however, Defendant contends that Plaintiff has failed to show she was subjected to sexual harassment to an extent that affected a term, condition, or privilege of employment.   Plaintiff admits that she did not report the harassment to management.  Nevertheless, there is sufficient information presented from which a jury could deduce that Defendant knew or should have known about the harassment. In addition, a jury may conclude that Plaintiff acted reasonably when she failed to report the incidents to management. Although Bradley did not hold the power to hire and fire, he was a group leader.  Also, Bradley was often seen with managers Don Holiman and Curtis Anderson, both of whom had made lurid gestures toward Plaintiff.  Finally, Plaintiff approached her union representative and asked him to make a report, but was told that she didn't want to "open that can of worms" -- implying matters would only become worse if she complained.

The Eighth Circuit has stated that in determining whether a work environment is hostile, it will not regard the evidence as "a series of discrete incidents"[32] but will look "at the totality of the circumstances."[33] Based on the totality of the evidence, Plaintiff has met her *prima facie* burden that she was sexually harassed and endured a hostile work environment.

> In fine, a policy printed in a handbook does not prove, as a matter of law, that an employer takes reasonable action to prevent sexual harassment. In this case, a jury must weigh all the disputed material facts and decide if Defendant is entitled to an affirmative defense because it took preventative measures.[34]

---

[32]*Eich v. Board of Regents for Cent. Missouri State University*, 350 F.3d 752, 759 (8th Cir.  2003).

[33]*Henthorn v. Capitol Communications, Inc.*, 359 F.3d 1021, 1026 (8th Cir.  2004).

[34]*McDaniel*, 2006 WL 83470, *4.

Given the frequency, severity, and actors, a fact issue arises as to whether Defendant was aware of the harassment. Being leered at, groped, teased, and repeatedly flashed during work by supervisory employees is unacceptable.  Again, Defendant's claim that it lacked any knowledge of the events and overall tone of the workplace is a question of fact for a jury.  Therefore, Defendant's Motion for Summary Judgment on Plaintiff's hostile work environment claim is DENIED.

### B.    Retaliation

To establish a *prima facie* case of retaliation, Plaintiff must demonstrate that she took part in a statutorily protected activity, that Defendant subsequently took adverse employment action against her, and that a causal connection exists between the protected activity and the adverse action.[35]      An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage.[36] Minor changes in working conditions that merely inconvenience an employee or alter an employee's work responsibilities do not amount to an adverse, tangible action.[37]  Minor changes in duties or working conditions that cause no materially significant disadvantage do not meet the standard either. A job reassignment involving no corresponding reduction in salary, benefits, or prestige is insufficient to establish an adverse employment action.[38]

Plaintiff claims that after filing her complaint with the EEOC, she "suffered retaliation in the form of negative comments about her job performance, threats to her job, and being denied time to

---

[35]*Stewart v. Independent School Dist. No. 196*, 481 F.3d 1034 (8th Cir. 2007).

[36]*Cossette v. Minn. Power & Light*, 188 F.3d 964, 972 (8th Cir. 1999).

[37]*Ledergerber v. Stangler*, 122 F.3d 1142, 1144 (8th Cir. 1997);  *Saulsberry v. St. Mary's Univ. of Minn.*, 318 F.3d 862, 868 (8th Cir. 2003).

[38]*Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir. 1994).

go to see the doctor of ten occasions."[39]  She later argues that "Bradley, Anderson and Holiman all had the power to intimidate [her], damage her career with Sanyo, and make her life harder . . . thereby silencing [her]."[40]

Defendant alleges that Plaintiff complaints are nothing more than "petty annoyances" that are not actionable.  Defendant also cites Plaintiff's deposition testimony in which she admits that she has never been laid off "out of seniority" -- meaning, her layoffs were in accordance with her union's collective bargaining agreement.[41]  Defendant also reiterates that Plaintiff is currently employed by Defendant; so, although she was temporarily fired, she is currently working for Defendant.[42]

Regarding the doctor's appointments, Plaintiff admits that whenever she filled out a form one day in advance, Defendant honored it.[43]  Although Plaintiff alleges that she was repeatedly not allowed to attend doctor's appointments, she provided no examples.[44]  In fact, Defendant has presented evidence that in 2005, Plaintiff took off on eight separate occasions for approximately sixty working days.[45]

---

[39]Doc. No. 40.

[40]*Id.*

[41]Doc. No. 24-3, p. 5-6.

[42]There is no discussion from either side as to why Plaintiff was fired or rehired -- just that her termination did not violate the collective bargaining agreement.

[43]Doc. No. 24-3, p. 3.

[44]*Id.*

[45]Doc. No. 24-3, Ex. G.

Based on the above, Defendant's Motion for Summary Judgment on Plaintiff's Title VII and FMLA retaliation claims is GRANTED because she has not presented evidence of an adverse employment action.

**IV.      Conclusion**

Defendant's Motion for Summary Judgment on Plaintiff's hostile work environment claim is DENIED, but it is GRANTED on Plaintiff's retaliation and FMLA claims.

IT IS SO ORDERED this 10th day of May, 2007.


/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE